UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/12/05
```

VENTURA ASSOCIATES, INC.,

                      Plaintiff,

- against -

INTERNATIONAL OUTSOURCING
SERVICES, INC.,

                      Defendant.

**OPINION AND ORDER**

04 Civ. 5962 (PKL)

**APPEARANCES**

PATRICK J. CORBETT, ESQ.
Badiak Will & Ruddy, LLP
120 Broadway, Suite 1040
New York, New York 10271-1040

Attorneys for Plaintiff

RICHARD PAUL STONE, ESQ.
Costello, Shea & Gaffney LLP
44 Wall Street
New York, New York 10005

Attorneys for Defendant



**LEISURE, District Judge:**

This case arises from an oral agreement between plaintiff and defendant, which provided that they would administer a promotional campaign for a third party client of plaintiff. Plaintiff, Ventura Associates, Inc. ("Ventura"), alleges that defendant, International Outsourcing Services, Inc. ("IOS"), breached the agreement and caused Ventura to incur liabilities of $131,787.30 to its client. Consequently, Ventura seeks damages in that amount from IOS. IOS now petitions the Court to dismiss Ventura's claim for lack of personal and subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(1), or, in the alternative, to enjoin its prosecution to defer to IOS's declaratory judgment action that was pending in the Western District of Texas. For the reasons below, defendant's motion to dismiss is denied.

## BACKGROUND

Ventura is a New York corporation engaged in the business of promotion fulfillment. (See Affidavit of Nigel Morgan dated October 22, 2004 ("Morgan Aff.") ¶ 1.) On October 1, 2001, Ventura contracted with Masterfoods USA ("Masterfoods") to fulfill an advertising promotion for Whiskas Cat Food, one of Masterfoods' products. (Id. ¶ 5.) As part of the promotion, Ventura was responsible for arranging the distribution of 5,000 $25 gas cards to purchasers of Whiskas Cat Food and others. (Id.)

On January 2, 2002, Ventura entered into an oral agreement with IOS, an Indiana limited liability company that provides a variety of outsourced services to businesses around the world. (See Affidavit of Frank Clausen dated October 5, 2004 ¶ 3.) The oral agreement provided that IOS would conduct the actual distribution of the gas cards throughout the United States. (Id. ¶ 6; see also Complaint ("Compl.") ¶ 6.) According to IOS, it distributed 137 gas cards on December 14, 2003, but withheld the remaining 4,863 cards because a Ventura employee informed it that

the gas cards may be defective. (See Affidavit of Patrick J. Corbett, Esq. dated October 27, 2004, Ex. 10.) The remaining cards were never distributed and subsequently expired. (Id., Ex. 6.) When Ventura informed Masterfoods that the cards had not been distributed, Masterfoods sought reimbursement of $131,787.30 from Ventura, which is the pro-rated amount Masterfoods paid for the remaining cards. (Id., Ex. 8.) Ventura then filed a claim with its insurer, The Hartford Fire Insurance Company ("Hartford"), for this amount. (See Morgan Aff. ¶ 9.) Ultimately, Masterfoods was reimbursed in full, with $106,787.30 paid by Hartford and $25,000 paid by Ventura in the form of its deductible. (Id.)

After some correspondence between counsel for Ventura and counsel for IOS in which Ventura's counsel asserted that IOS was responsible for the full amount paid to Masterfoods, IOS filed an action in Texas state court on July 9, 2004 seeking a declaratory judgment that it had not breached the oral agreement with Ventura. Ventura later removed the case to federal court and filed a motion to dismiss for failure to state a claim or, in the alternative, to transfer the case to this District. On August 2, 2004, Ventura filed this breach of contract action against IOS, claiming damages of $131,787.30. In November 2004, IOS submitted the instant motion to dismiss.

On December 7, 2004, District Judge David Briones of the United States District Court for the Western District of Texas, El Paso Division, granted Ventura's motion to transfer, denied its motion to dismiss as moot, and transferred the action to the Southern District of New York. See Int'l Outsourcing Servs. v. Ventura Assocs., No. 04 CA 353, 2004 U.S. Dist. LEXIS 27761 (W.D. Tex. Dec. 7, 2004). Subsequently, this Court accepted IOS's transferred action as related to Ventura's action.[1]

---

[1] The transferred action was assigned docket number 04 Civ. 10250.

In the instant motion, IOS argues that (1) Ventura's breach of contract claim should be dismissed because the Court cannot properly exercise personal jurisdiction over IOS and (2) Ventura fails to satisfy the $75,000 amount in controversy requirement for diversity jurisdiction. Moreover, even if there are proper jurisdictional bases to proceed, IOS contends that this case should be enjoined to defer to its properly commenced action in Texas pursuant to the first to file rule. Plainly, this argument has been rendered moot by the subsequent transfer of IOS's action to this District. Therefore, the Court need only consider IOS's two jurisdictional arguments.

## DISCUSSION

### I. Personal Jurisdiction over IOS

When considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, it is well established that "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litigation, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." Metro. Life, 84 F.3d at 566. "Eventually, personal jurisdiction must be established by a preponderance of the evidence, either at an evidentiary hearing or at trial. But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993); see also Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

Furthermore, "[a]bsent a specific grant of jurisdiction, the reach of a federal district court's personal jurisdiction is coterminous with that of the personal jurisdiction of a court of



general jurisdiction in the state in which the court sits." Geller Media Mgmt., Inc. v. Beaudreault, 910 F. Supp. 135, 137 (S.D.N.Y. 1996) (Leisure, J.) (citing Fed. R. Civ. P. 4(k)(1)(A)). Thus, "the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." Metro. Life, 84 F.3d at 567 (quoting Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963) (en banc)). To determine whether it has personal jurisdiction over IOS, the Court must engage in a two-part inquiry. First, it must determine whether there is personal jurisdiction over IOS under New York state law; second, if New York law provides for personal jurisdiction, the Court must determine whether the assertion of jurisdiction comports with the constitutional requirements of due process. Id.

There are two types of jurisdiction that a court may exercise over a defendant: general and specific. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984). In the case of general jurisdiction, plaintiff's claim need not arise out of defendant's contacts with the forum state, but defendant's contacts must be substantial; with specific jurisdiction, however, defendant's contacts need not be as substantial but plaintiff's claim must arise out of the contacts. These two types of jurisdiction are reflected both in New York's jurisdictional statutes, see N.Y.C.P.L.R. §§ 301-302 (McKinney 2001), and in the jurisprudence interpreting the Due Process limits of jurisdiction, see Helicopteros, 466 U.S. at 414.

Here, the parties have submitted competing affidavits in support of their divergent views on jurisdiction. Relying on the affidavits of its Chief Financial Officer, Nigel Morgan, and Executive Vice-President, Lisa Manhart, Ventura contends that the Court has personal jurisdiction over IOS pursuant to Sections 301 and 302 of the New York Civil Practice Law and

Rules ("CPLR"). (See Memorandum Of Law In Opposition To Defendant's Motion To Dismiss Or Transfer ("Pl. Mem.") at 4-8.) IOS, meanwhile, maintains that it is a New Jersey company that has no connection to New York sufficient to confer either general or specific jurisdiction over it. (See Defendant-Movant's Memorandum Of Law ("Def. Mem.") at 3-7.)

### A. General Jurisdiction under Section 301

Section 301 of the CPLR provides for the exercise of "jurisdiction over such persons, property, or status as might have been exercised heretofore." N.Y.C.P.L.R. § 301 (McKinney 2001). The Section permits courts to exercise personal jurisdiction over a foreign corporation that is "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence'" in the state. Jazini by Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998); see also McGowan v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323 (1981). To be "doing business" in the state for Section 301 purposes, a corporation must be present in the state "not occasionally or casually, but with a fair measure of permanence and continuity." Landoil Res. v. Alexander & Alexander Servs. Inc., 918 F.2d 1039, 1043 (2d Cir. 1990). New York courts have traditionally considered the following factors when making this determination: (1) the existence of an office in New York; (2) the solicitation of business in New York; (3) the presence of bank accounts or other property in New York; and (4) the presence of employees or agents in New York. Id.

The complaint in this action does not contain any allegations that would support the exercise of general personal jurisdiction under Section 301. In fact, the complaint and the two supporting affidavits acknowledge that IOS is based in New Jersey (see Compl. ¶ 2; Morgan Aff. ¶ 4; Affidavit of Lisa Manhart dated October 22, 2004 ("Manhart Aff.") ¶ 9), and none make any mention of a New York office or the presence of employees, agents, bank accounts, or other

property in New York. While Ventura avers that it has had a relationship with IOS since 2000 whereby IOS performed services for Ventura's clients in all fifty states, including New York (see Morgan Aff. ¶ 4), and that IOS regularly solicits and discusses its services with Ventura (see Manhart Aff. ¶ 4), these allegations alone do not demonstrate that IOS has engaged in a systematic and continuous course of business such that it has been present within the state. Rather, they suggest a certain level of contact with Ventura, which is not necessarily synonymous with contact with New York. Moreover, as discussed below, the sole jurisdictional allegation in the complaint, which states that New York is the proper forum because the oral contract at issue was "drafted, negotiated and agreed upon" here, is a more effective basis for specific jurisdiction, than for general jurisdiction. (Compl. ¶ 5.) Accordingly, the Court cannot exercise general jurisdiction over IOS pursuant to CPLR Section 301.

### B. Specific Jurisdiction under Section 302(a)(1)

As an alternative to its general jurisdiction argument, Ventura maintains that the Court has jurisdiction over IOS pursuant to New York's long-arm statute, which allows a court to exercise specific jurisdiction over a non-domiciliary who, in person or through an agent, "transacts any business within the state." N.Y.C.P.L.R. § 302(a)(1) (McKinney 2001). Under section 302(a)(1), jurisdiction is proper when: (1) the defendant has transacted business in New York; and (2) the cause of action arises out of the subject matter of the transacted business. Id.; Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (citing McGowan, 52 N.Y.2d at 272 (requiring "an articulable nexus between the business transacted and the cause of action sued upon")). A non-domiciliary transacts business under section 302(a)(1) when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." Cutco Indus., 806 F.2d at 365 (quoting



McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607 (1967)). Courts look to the totality of the circumstances to determine whether the defendant has engaged in such purposeful activity and require a "substantial nexus" between the business transacted and the cause of action sued upon. See PDK Labs, Inc. v. Freidlander, 103 F.3d 1105, 1109 (2d Cir. 1997); Agency Rent a Car System, Inc. v. Grand Rent a Car Corp., 98 F.3d 25, 29-31 (2d Cir. 1996); Cutco Indus., 806 F.2d at 365; Cedric Kushner Prods., Ltd. v. Thobela, No. 93 Civ. 4592, 1994 WL 163992, at *2 (S.D.N.Y. 1994) (Leisure, J.). In a breach of contract case, the central question is "whether the defendant has performed purposeful acts in New York in relation to the contract." Cedric Kushner Prods., 1994 WL 163992 at *2 (quoting A.C.K. Sports, Inc. v. Doug Wilson Enters., 661 F. Supp. 386, 390 (S.D.N.Y. 1987)). Notably, New York's provision for specific jurisdiction under section 302 does not extend as far as the federal Constitution permits. Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GMBH & Co., 150 F. Supp. 2d 566, 572 (S.D.N.Y. 2001).

Ventura argues that IOS is subject to the long-arm jurisdiction of the Court because it negotiated the oral agreement at issue in New York and that agreement provided that IOS would render services in all fifty states, including New York. (See Pl. Mem. at 7.) Therefore, Ventura concludes that IOS transacted business in New York and Ventura's breach of contract claim arises out of that business. IOS disputes this view, claiming that it did not travel to New York to negotiate or execute the oral agreement and did not provide services in New York. (See Def. Mem. at 6.)

As noted above, when presented with competing affidavits at the motion to dismiss stage, the Court must resolve all doubts in plaintiff's favor, notwithstanding a countervailing presentation by defendant. See A.I. Trade, 989 F.2d at 79-80. Thus, the Court credits Ventura's

allegations that the agreement was "drafted,[2] negotiated and agreed upon" in New York and that IOS offered its services in New York. Though these allegations are not overwhelming, they are legally sufficient to establish that IOS performed purposeful acts in New York in relation to the agreement at issue. Considering the totality of the circumstances at this preliminary stage, the Court finds that IOS availed itself of the benefits and protections of doing business in New York and that its contacts with New York in negotiating and fulfilling the terms of the agreement, as alleged by Ventura, bear a substantial nexus to the instant breach of contract claim. Accordingly, Ventura has satisfied the Court at this preliminary stage that the exercise of jurisdiction over IOS is permitted under New York state law.

Moreover, the Court concludes that the assertion of jurisdiction here comports with the Constitutional guarantee of due process. Pursuant to Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945), a state may exercise constitutional jurisdiction over a non-domiciliary defendant who has had certain "minimum contacts" such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Id. at 316 (citation omitted). The measure of a defendant's minimum contacts with the forum state rests upon whether the defendant's "'conduct and connection with the forum State" are such that it "should reasonably anticipate being haled into court there.'" LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 216, 735 N.E.2d 883, 887 (2000) (quoting World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980)). If the defendant "'purposefully avails itself of the privilege of conducting activities within the forum State,'" it may reasonably anticipate the prospect of defending a suit there and jurisdiction is proper. Id. (quoting World-Wide Volkswagon, 444 U.S. at 297 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958))).

---

[2] Given that the parties apparently agree that the contract at issue is an oral agreement, it is not clear to the Court why Ventura would allege that agreement was "drafted" in New York.

In addition to the minimum contacts inquiry, the Court must also determine whether conferring jurisdiction upon a non-domiciliary defendant offends traditional notions of fair play and substantial justice. In resolving this consideration, the Court should weigh the burden on the defendant, the interests of the forum State, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest in furthering fundamental substantive social policies. See Asahi Metal Indus. Co. v. Super. Ct. of California, 480 U.S. 102, 113 (1987) (citing World-Wide Volkswagon, 444 U.S. at 292).

Based on the current record, IOS negotiated an oral agreement in New York with Ventura, a New York corporation that it had worked with for several years, concerning its distribution of products in all fifty states, including New York. By this conduct, IOS purposefully availed itself of the benefits of transacting business in New York, and as a result, it was reasonably foreseeable that it could be haled into court here. Furthermore, though IOS is based in Indiana, it appears that the employees relevant to the instant action are based at its regional plant in New Jersey as that is where IOS stored the gas cards. Thus, the burden on IOS of defending a suit in New York is not extraordinary and the case may be most efficiently resolved in New York because much of it unfolded in New York and New Jersey. In addition, New York has an interest in providing a convenient forum for Ventura, a New York corporation that may be entitled to relief under New York law. Therefore, IOS has sufficient minimum contacts with New York such that maintenance of this suit does not offend the notions of fair play and substantial justice. Accordingly, the Court's exercise of jurisdiction over this defendant

satisfies both the statutory requirements of New York law and the Constitutional requirements of the Due Process Clause.[3]

## II. Subject Matter Jurisdiction

IOS contends that, because Hartford paid all of the $131,787.30 to Masterfoods except for Ventura's $25,000 policy deductible, the maximum breach of contract damages incurred by Ventura is $25,000. Therefore, IOS concludes that Ventura cannot satisfy the $75,000 threshold required by 28 U.S.C. § 1332(a), and its claim should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[4] (See Def. Mem. at 7-9.) The Court disagrees as IOS's position ignores established New York law.

The Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999) (citation omitted). A defendant seeking to dismiss an action based on an insufficient amount in controversy faces a high hurdle. As the Supreme Court explained in St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938):

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is

---

[3] Because the Court finds that jurisdiction is proper pursuant to Section 302(a)(1), it need not address plaintiff's cursory argument based on Section 302(a)(3), which provides for jurisdiction over a non-domiciliary who commits a tortious act outside of the state causing an injury within the state. See N.Y.C.P.L.R. § 302(a)(3) (McKinney 2001).

[4] In the complaint, Ventura asserts that the Court's subject matter jurisdiction is based upon 28 U.S.C. § 1332, as well as 28 U.S.C. § 1331 and 28 U.S.C. § 1337. However, IOS only addresses Section 1332 jurisdiction in its moving papers and Ventura does not argue for jurisdiction pursuant to Section 1331 or 1337 in its opposition papers. Moreover, the Court cannot conceive of how Ventura's breach of contract claim implicates either the general type of federal question jurisdiction codified in Section 1331 or the more specific type relating to commerce codified in Section 1337. Thus, the Court will assume that the parties have recognized that the only potential grounds for subject matter jurisdiction here is Section 1332.

11

> apparently made in good faith. It must appear to a legal certainty
> that the claim is really for less than the jurisdictional amount to
> justify dismissal.

See also Scherer v. Equitable Life Assur. Soc'y of the United States, 347 F.3d 394, 397 (2d Cir. 2003) (defining "legal certainty" as a case in which "the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim").

The complaint alleges breach of the oral agreement between Ventura and IOS, and claims that Ventura has been damaged in the amount of $131,787.30, the full amount paid to Masterfoods for the gas cards that were not distributed. IOS attempts to rebut the presumption that this figure is a good faith representation of the actual amount in controversy by claiming that Ventura is limited to recovering only its $25,000 deductible. As this is a diversity case, New York state substantive law applies. See Erie R. Co. v. Tompkins, 304 U.S. 64, 71-80 (1938). Consequently, in a case such as this where the plaintiff is insured and has been partially indemnified by its insurer, the Court must consider New York's "collateral source" rule. See Ocean Ships, Inc. v. Stiles, 315 F.3d 111, 116 (2d Cir. 2002). Under the collateral source rule, "damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partially indemnified for his loss by insurance effected by him and to the procurement of which the wrongdoer did not contribute." Id. (quoting Healy v. Rennert, 9 N.Y.2d 202, 206, 173 N.E.2d 777, 778 (1961) and citing Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 623 n.15 (2d Cir. 2001); Kish v. Bd. of Educ., 76 N.Y.2d 379, 383-84, 558 N.E.2d 1159, 1161 (1990)). While the scope of the rule has been limited by statue such that evidence of third party indemnification may be considered in certain types of tort actions, see N.Y.C.P.L.R. § 4545

(McKinney 2001), the rule continues to apply to contract claims.[5] See Ocean Ships, 315 F.3d at 116 n.2 (citing Horstmann v. Nicholas J. Grasso P.C., 210 A.D.2d 671, 673 (App. Div. 1994)); Ideal Mut. Ins. Co. v. Korean Reinsurance Corp., 657 F. Supp. 1174, 1175 (S.D.N.Y. 1987). Therefore, Ventura's potential recovery is not limited to $25,000, and the Court presumes that $113,787.30 is a good faith representation of the actual amount in controversy.[6] The fact that Ventura chose to minimize its financial risk through insurance cannot serve to benefit IOS by reducing its potential liability to Ventura. As a result, the amount in controversy requirement is satisfied, and because there is diversity of citizenship between the parties, the Court may exercise subject matter jurisdiction over this action.[7]

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(2) is DENIED. The parties are directed to appear for a status conference on July 28, 2005 at 11:00 A.M.

---

[5] Regrettably, neither party mentioned the collateral source rule in their papers; instead they focused on whether Ventura may sue not only on its own behalf but also "in behalf of any party or person who may now have or hereinafter acquire an interest in this action." (Compl. ¶ 3.) Plainly, the collateral source rule renders that issue moot.

[6] IOS maintains that only Hartford has the right to seek payment for the amount over and above the $25,000 paid by Ventura directly to Masterfoods. (See Def. Mem. at 8.) This argument relies upon the false assumption that Hartford – not Ventura – is the only real party in interest for this amount. Status as a real party in interest is a procedural matter governed, in a diversity case, by Rule 17(a) of the Federal Rules of Civil Procedure. See Brocklesby Transp. V. E. States Escort Servs., 904 F.2d 131, 133 (2d Cir. 1990). Rule 17(a) requires that "every action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). Applying Rule 17(a) in the insurance context, the Supreme Court has explained that "[i]f [the insurer] has paid only part of the loss both the insured and insurer . . . have substantive rights against the tortfeasor which qualify them as real parties in interest." United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 380-81 (1949) (citation omitted). Thus, Ventura's payment of the $25,000 deductible created an independent interest sufficient to qualify it as a real party in interest under Rule 17(a).

[7] Because the collateral source rule allows Ventura to make a claim for the full amount paid to Masterfoods, the Court need not address the parties' dispute over the applicability of Section 1004 of the CPLR, which permits an insured party, in certain circumstances, to sue on behalf of its insurer without joining the insurer.

13

**SO ORDERED.**

New York, New York
July 12, 2005

                                                      _____
                                                                                    U.S.D.J.

Copies of this Opinion and Order have been sent to:

Patrick J. Corbett, Esq.
Badiak Will & Ruddy, LLP
120 Broadway, Suite 1040
New York, New York 10271-1040

Richard Paul Stone, Esq.
Costello, Shea & Gaffney LLP
44 Wall Street
New York, New York 10005